UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARIA CASILDA ORELLANA,

               Petitioner,

    v.

JULIO HERNANDEZ et al.,

               Respondents.

CASE NO. 2:26-cv-01167-LK

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS

This matter comes before the Court on Petitioner Maria Casilda Orellana's amended petition for writ of habeas corpus. Dkt. No. 19. For the reasons explained below, the Court grants in part and denies in part Casilda Orellana's amended petition.[1]

## I.    BACKGROUND

Casilda Orellana is a native and citizen of Honduras. Dkt. No. 21 at 2. She applied for admission into the United States in December 2018. *Id.* Customs and Border Protection agents issued her a Notice to Appear ("NTA") alleging that she was removable pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I)), and transferred her to the custody of the Immigration and Customs

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized").

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 1

Enforcement ("ICE") Office of Enforcement and Removal Operations ("ERO") in San Diego. *Id.* ERO enrolled Casilda Orellana in the Alternatives to Detention ("ATD") program. *Id.* She then moved briefly to New York, and then to Easton, Maryland, where she reported to the Baltimore ERO office. *Id.*; Dkt. No. 13 at 2.

Casilda Orellana applied pro se for asylum and for withholding of removal in 2021, obtained counsel in 2022, and applied again through counsel in February 2025. Dkt. No. 21 at 3. An immigration judge ("IJ") conducted a merits hearing on March 4, 2025, denied both applications, and ordered Casilda Orellana removed to Honduras. *Id.*; Dkt. No. 22-1 (IJ decision). Casilda Orellana did not appeal the IJ's decision, so it became final on April 3, 2025. *Id.*; *see* Dkt. No. 19 at 7 (amended habeas petition, agreeing that Casilda Orellana is subject to a final order of removal). ICE did not detain or arrest Casilda Orellana immediately after the removal decision became final, and instead, she continued to live with her family, go to work, take her daughters to school, attend church, and take care of her grandchildren. Dkt. No. 13 at 2.

Nearly a year later, on March 5, 2026, she reported to an ICE office in Baltimore for a scheduled appointment. *Id.* After her name was called, "four ICE agents grabbed . . . and arrested" her without telling her why she was being detained or providing notice that she was going to be arrested. *Id.* Casilda Orellana was moved to a holding cell with 25 other women that "only had one toilet, no beds, no sunlight, no access to drinking water, or hygiene items," and she was not allowed to call her attorney. *Id.* After detaining her in Baltimore for four days, ICE transported Casilda Orellana to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 21 at 3.[2]

---

[2] Casilda Orellana avers that she was first transported to a detention center in Arizona, and then to NWIPC. Dkt. No. 13 at 3.

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 2

After a month of detention, on April 7, 2026, around 3:00 a.m., ICE agents informed Casilda Orellana that she would be transferred to Arizona or deported to Honduras. Dkt. No. 13 at 3. The same day at approximately 11:18 a.m., Casilda Orellana's counsel filed a petition for a writ of habeas corpus, Dkt. No. 1; *see also* Dkt. No. 10 at 1, and filed a motion for temporary restraining order ("TRO") at approximately 11:59 a.m., Dkt. No. 4. Around 11:42 a.m., Casilda Orellana's flight departed for Arizona. Dkt. No. 21 at 4. Around 12:53 p.m., the Court entered a scheduling order directing Respondents[3] to show cause why the writ should not be granted and requiring them to provide "at least 48 hours' notice . . . prior to any action to move or transfer [Casilda Orellana] from the Western District of Washington or to remove [her] from the United States." Dkt. No. 7 at 2; *see also* Dkt. No. 10 at 2. The Court also denied Casilda Orellana's TRO motion as moot in light of the scheduling order. Dkt. No. 8. At approximately 5:07 p.m. the same day, Respondents provided notice that Casilda Orellana had been "transferred out of the Western District of Washington in connection with the execution of a final order of removal," prior to receipt of the Court's scheduling order. Dkt. No. 10 at 1–2. In the same notice, Respondents stated that "[Casilda Orellana's] removal from the United States is imminent." *Id.* at 2.

On April 9, 2026, after her counsel unsuccessfully attempted to reach agreement with Respondents to abstain from removing Casilda Orellana during the pendency of her habeas case, Casilda Orellana filed a second TRO motion seeking an order preventing her removal during these proceedings and requiring Respondents to return her to NWIPC. Dkt. No. 11. The Court provisionally granted in part the motion, prohibiting Respondents from removing Casilda Orellana

---

[3] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 3

from the United States during the pendency of proceedings. Dkt. No. 16. It also ordered the parties to meet and confer regarding a stipulated briefing schedule for the TRO motion. *Id.* On April 11, 2026, ICE transferred Casilda Orellana from the Eloy Detention Center in Arizona back to NWIPC, where she currently is detained. Dkt. No. 21 at 5. Since then, the parties have fully briefed the TRO pursuant to their agreed briefing schedule. Dkt. Nos. 17, 18, 20, 23. Casilda Orellana also filed an amended habeas petition, Dkt. No. 19, which is also fully briefed, Dkt. Nos. 24, 25.

## II.    DISCUSSION

In her amended petition for writ of habeas corpus, Casilda Orellana alleges that Respondents violated (1) the Immigration and Nationality Act ("INA") by failing to comply with the notice requirements in the statute's implementing regulations at 8 C.F.R. §§ 212.5(e), 241.4(l), and 241.13; and (2) her Fifth Amendment right to procedural due process by re-detaining her without first providing "written notice and a pre-deprivation hearing before a neutral decisionmaker to determine whether re-detention is warranted based on danger or flight risk." Dkt. No. 19 at 4–13. She requests an order (1) immediately releasing her from custody "on the same conditions of release as before," (2) declaring that her detention violates the due process clause and the INA, and (3) granting her leave to seek attorney's fees. *Id.* at 14.[4]

### A.    Legal Standards

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release

---

[4] The amended petition also requested a permanent injunction preventing "her re-detention absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that her is a flight risk or danger to the community and that no alternative to detention would mitigate those risks[.]" *Id.* On reply, Casilda Orellana withdrew this request. Dkt. No. 25 at 1.

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 4

from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B.      Respondents Failed to Provide Casilda Orellana with the Process Required**

The parties agree that Casilda Orellana is currently detained pursuant to 28 U.S.C. § 1231, though they appear to disagree as to which specific subsection applies. Dkt. No. 19 at 4; Dkt. No. 24 at 6. The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Accordingly, the Court addresses the applicable statutory governing authority.

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 5

Respondents argue that Casilda Orellana is "subject to mandatory detention under 8 U.S.C. § 1231(a)(2) following the entry of a final order of removal[.]" Dkt. No. 24 at 6. They assert that the 90-day "removal period" under Section 1231(a) (during which detention is mandatory) did not begin until ICE detained Casilda Orellana on March 5, 2026. *Id.* Specifically, her custody "marked the commencement of mandatory post-order detention under 8 U.S.C. § 1231(a) for the purpose of effecting removal within 90 days." *Id.*

Respondents' interpretation is wrong. The statute states that the "removal period" begins on the "latest of" three possible dates: (1) "the date the order of removal becomes administratively final," (2) if the removal order is judicially reviewed, the date of the court's final order, or (3) if the noncitizen is detained (except under an immigration process), the date they are released from detention. 8 U.S.C. § 1231(a)(1)(B)(i)–(iii). It is undisputed that Casilda Orellana's order of removal became administratively final in April 2025, and that the order was not judicially reviewed. Dkt. No. 19 at 11; Dkt. No. 21 at 3. The removal period thus started that day and concluded 90 days later, on July 2, 2025. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021); *Diouf v. Mukasey*, 542 F.3d 1222, 1229–30, 1231 n.5 (9th Cir. 2008); *N.Y.F.S. v. Bondi*, No. 2:25-CV-02556-LK, 2026 WL 91889, at *4 (W.D. Wash. Jan. 13, 2026).[5]

Because Casilda Orellana has been in the "post-removal period" since July 2025, the statutory provisions governing her detention are 8 U.S.C. § 1231(a)(6) (allowing, but not mandating, detention beyond the removal period) and 8 U.S.C. § 1231(a)(3) (requiring supervision if released). *See also Guzman Chavez*, 594 U.S. at 528–29 (2021). "[T]he due process analysis attaches in the post-removal period[.]" *Khotesouvan v. Morones*, 386 F.3d 1298, 1301 (9th Cir.

---

[5] The removal period may be extended beyond 90 days if the noncitizen conspires or acts to prevent her removal, 8 U.S.C. § 1231(a)(1)(C), but Respondents do not contend that is the case here, *see generally* Dkt. No. 24.

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 6

2004). Because Casilda Orella remained on release following the removal period, she was effectively released under these governing statutory provisions.

As discussed above, Casilda Orellana contends that Respondents did not comply with the statutes' implementing regulations when they re-detained her. Dkt. No. 19 at 4–13. She asserts that the relevant regulatory requirements are found at 8 C.F.R. §§ 212.5(e), 241.4(l), and 241.13. *Id.* at 5, 10–12. The government argues that the first section, 212.5(e), is "inapplicable" because it "governs termination of parole granted to arriving [noncitizens] under 8 U.S.C. § 1182(d)(5)(A)." Dkt. No. 24 at 10. The Court agrees. Casilda Orellana's parole prior to April 3, 2026 was "a pre-final-order form of supervised release granted while removal proceedings were pending." *Id.* After her removal order became final, she was no longer paroled pursuant to 8 U.S.C. § 1182(d)(5)—rather, she was in the 90-day removal period pursuant to 8 U.S.C. § 1231(a)(2)—and the implementing regulations at 8 C.F.R. § 212.5(e) became inapplicable.

However, the Court finds that the regulations at 8 C.F.R. §§ 241.4 and 241.13 are applicable, because Respondents allowed Casilda Orellana to remain released following the removal period, indicating that she was effectively granted release under 8 U.S.C. § 1231(a)(6). Specifically, despite the statutory requirement that Respondents "shall detain" a noncitizen during the removal period, 8 U.S.C. § 1231(a)(2)(A), it is undisputed that Respondents opted not to detain Casilda Orellana for roughly a year after her removal order became final. Respondents contend that this yearlong delay reflects "ordinary enforcement discretion" which did not "forfeit or reset the government's statutory obligation . . . to detain" Casilda Orellana at the March 5, 2026 check in. Dkt. No. 20 at 5. But as discussed above, Respondents are incorrect that the removal period somehow only begins to run whenever the government deigns to detain a noncitizen with a final removal order. Thus, the relevant regulations are those at 8 C.F.R. §§ 241.4(l) and 241.13(i), pertaining to the "[r]evocation of release" of a noncitizen previously released pursuant to 8 U.S.C.

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 7

§ 1231(a)(6).[6] As Casilda Orellana observes, she "was clearly under the supervision of the Respondents" during her post-final-order release, "as she was required to attend an ICE check-in" during this time. Dkt. No. 25 at 12 (citing Dkt. No. 13 at 2); *see also* Dkt. No. 20 at 5 (Respondents noting that ICE "deci[ded] to permit [Casilda Orellana] to remain on ATD for approximately one year after the removal order became final"). Therefore, although ICE did not formally designate Casilda Orellana as being on supervised release under Section 1231(a)(3) and (a)(6), her release thereunder was necessarily implied by Respondents' discretionary decision to keep her on release after the removal period, and the implementing regulations provide the process required under the statute to revoke that release.

A noncitizen's release under Section 1231(a)(6) can be revoked (1) where the noncitizen violates her conditions of release or (2) where "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)–(2). Alternatively, "[t]he Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [USCIS] custody [a noncitizen] previously approved for release under the procedures in this section," and "[a] district director may also revoke release of [a non-citizen] when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(l)(2). Discretionary revocation is permitted when, in the opinion of the revoking official:

(i) The purposes of release have been served;

(ii) The [noncitizen] violates any condition of release;

---

[6] Respondents imply that the regulations are inapplicable because the March 5 arrest marked Casilda Orellana's "first custody under 8 U.S.C. § 1231(a)," so "there was no prior post-[final]-order supervised release to 'revoke' in the classic sense." Dkt. No. 24 at 11. But the only sources of statutory authority under which Respondents could be authorized to detain Casilda Orellana are Section 1231(a)(2), which is inapplicable because the removal period expired last July, and Section 1231(a)(6), which is implemented in part through regulations at 8 C.F.R. §§ 241.4 and 241.13.

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 8

(iii) It is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]; or

(iv) The conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate.

*Id.*

Upon revocation, the noncitizen "will be notified of the reasons for revocation of his or her release," and USCIS "will conduct an initial informal interview promptly after his or her return to [USCIS] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification," including by "submit[ting] any evidence or information that he or she believes shows there is no significant likelihood he or she [will] be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." 8 C.F.R. § 241.13(i)(3); *see also* 8 C.F.R. § 241.4(l)(1) ("Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release . . . [and] be afforded an initial informal interview[.]"); *see also Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025) (courts "have interpreted section 241.4(l) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation") (collecting cases).

Here, Respondents suggest that ICE followed the regulatory requirements because "revocation, or initial post-order custody, occurred precisely because the purposes of [Casilda Orellana]'s pre-order supervised release had been served by entry of the final removal order[.]" Dkt. No. 24 at 11. But as Respondents emphasize, Casilda Orellana's pre-order supervised release had automatically terminated roughly one year prior to her detention. *Id.* at 10. Nothing in the record indicates that she was provided with notice of the reason for revocation of her *post-order* release or the informal interview required by the regulations. *See, e.g.*, Dkt. No. 24 at 12 (Respondents averring that "[a]ny alleged procedural deficiency would be adequately remedied by providing the post-custody informal interview contemplated by 8 C.F.R. § 241.4(l)(1)[.]"); Dkt.

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 9

No. 13 at 3 (Casilda Orellana's declaration describing her arrest and detention). Indeed, the Warrant of Removal/Deportation dated the same day that Casilda Orellana was arrested does not specify a reason for her re-detention other than that she has a final order of removal. Dkt. No. 22-3. Furthermore, ERO's summary of events suggests that ICE first arrested Casilda Orellana, then got the warrant. *See* Dkt. No. 21 at 3 (at Casilda Orellana's check-in appointment, "ERO became aware that [she] had a final order of removal to Honduras, and decided to arrest and detain [her]").

The Court thus concludes that Respondents failed to provide Casilda Orellana with the process due to her as described above.

**C.      The Court Grants Casilda Orellana's Request for Release**

As discussed above, Casilda Orellana contends that her Fifth Amendment rights were violated by her re-detention without constitutionally adequate procedural safeguards. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80.

1.      Constitutionally Protected Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*,

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 10

533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties " in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Here, after briefly detaining Casilda Orellana in 2018, DHS released her from custody. Dkt. No. 13 at 1–2; Dkt. No. 21 at 2; Dkt. No. 22-2 at 3–4. She was living freely within the community and with her family until her arrest, and in that time she "never missed a court date or an ICE check in." Dkt. No. 13 at 2; *see also* Dkt. No. 22-2 at 4 (A-file noting no reporting violations and no criminal history). Thus, she spent the vast majority of her over seven years in the United States released, "going to work, taking [her] daughters to school, going to church, and taking care of [her] grandchildren." Dkt. No. 13 at 2; *see also* Dkt. No. 14 at 1–2. In addition, the government issued her an Employment Authorization, and she worked as a cleaner for around six years. Dkt. No. 14 at 2. She is entitled to at least those protections described above with respect to her protected liberty interest in remaining out of immigration custody.

2.      Procedural Protections

To determine what procedures are constitutionally sufficient to protect petitioners' liberty interest, courts analyze the three *Mathews* factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context," 53 F.4th 1189, 1206–07 (9th Cir. 2022), and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025). Casilda Orellana asserts that *Mathews* applies here, and Respondents concur. Dkt. No. 19 at 6–12; Dkt. No. 24 at 7–8.

With respect to the first *Mathews* factor, Casilda Orellana argues that she has a strong interest in "freedom from physical confinement and in a hearing prior to any revocation of her liberty." Dkt. No. 19 at 8. As discussed above, she has lived freely in the country for over seven years and has grown "deep ties to the community through employment, church, her daughters' education and much more." *Id.* at 9. The Court finds that this factor weighs in favor of Casilda Orellana.

With respect to the second *Mathews* factor, Casilda Orellana argues that the risk of erroneous deprivation in the absence of prior notice and a pre-detention hearing is high. Dkt. No. 19 at 10. As discussed above, Respondents failed to follow the procedures required by their own regulations in detaining Casilda Orellana. "The procedures set forth in both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 are intended to provide noncitizens with fundamental due process protections

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 12

that courts have found to be constitutionally required." *Hall v. Nessinger*, No. 25-CV-667-JJM-PAS, 2026 WL 18583, at *4 (D.R.I. Jan. 2, 2026); *see also Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025) (8 C.F.R. § 241.4 "plainly provide[s] due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release by, among other things, . . . requiring certain procedural safeguards upon revocation to allow a noncitizen to have an opportunity to be heard to contest the reasons for revocation, including informal interviews and custody reviews"). "Therefore, ICE violates a noncitizen's due process rights when the agency re-detains [her] and fails to comply with these revocation procedures." *Hall*, 2026 WL 18583, at *4. Indeed, "[t]he risk of erroneous deprivation is significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due prior to being detained." *Albornoz v. Hermosillo*, No. 2:25-CV-02713-LK, 2026 WL 444983, at *5 & n.5 (W.D. Wash. Feb. 17, 2026); *see also Asfestani v. Current or Acting Field Off.*, No. 1:25-CV-1562-SCR, 2025 WL 3677321, at *6 (E.D. Cal. Dec. 18, 2025) ("[N]umerous courts have granted habeas relief for ICE's failure to comply with post-order detention regulations." (collecting cases)); *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (Courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." (collecting cases)); *Santamaria Orellana*, 2025 WL 2444087, at *6 (regulations governing revocation of release "are intended to provide due process in that they are fairly construed to be part of a procedural framework 'designed to ensure the fair processing of an action affecting an individual,' such that when they are not followed, prejudice is presumed"). This factor thus also weighs in Casilda Orellana's favor.

Finally, as to the third *Mathews* factor, "the government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by affording

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 13

the process" laid out in regulation because the government "is required to follow its own regulations." *Albornoz*, 2026 WL 444983, at *6. Therefore, this factor too weighs in favor of Casilda Orellana.

Under *Matthews*, the Court finds that Respondents failed to provide Casilda Orellana with the procedures due to her under the Due Process Clause. Accordingly, her detention is unlawful, and her release is warranted. *See Truong*, 2025 WL 2988357, at *6 ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.").

### III.    CONCLUSION

For the reasons stated above, the amended petition for a writ of habeas corpus, Dkt. No. 19, is GRANTED IN PART and DENIED IN PART, and the motion for temporary restraining order, Dkt. No. 11, is DENIED as moot. The Court ORDERS as follows:

1.    Respondents shall immediately release Casilda Orellana from custody on the terms of her most recent order of release or other terms consistent with Section 1231(a)(3);

2.    The parties shall file a Joint Status Report by May 12, 2026, confirming that Casilda Orellana has been released;

3.    Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 428 (3d Cir. 2026) (the Equal Access to Justice Act authorizes award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja,* 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *see also Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 14

compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 11th day of May, 2026.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART AMENDED PETITION FOR WRIT OF HABEAS CORPUS - 15